# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KARIN HEALY,<br>          Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, COMMISSIONER<br>OF THE SOCIAL SECURITY<br>ADMINISTRATION,<br>          Defendant. | No. 3:15-cv-01579 (JAM) |

## RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Karin Healy claims that she is disabled and cannot work as a result of degenerative joint disease, chronic back pain, heart attack, fibromyalgia, morbid obesity, and mental illness. She has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the defendant Commissioner of Social Security, who denied plaintiff's claim for disability insurance benefits. The Commissioner concluded that plaintiff was not disabled before the date that she was last insured for Social Security disability benefits. For the reasons that follow, I will deny plaintiff's motion to reverse or remand the decision of the Commissioner (Doc. #15), and grant defendant's motion to affirm the decision of the Commissioner (Doc. #18).

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #12-1 through Doc. #12-9. Plaintiff is a 53-year-old woman who lives in Bridgeport, Connecticut. Plaintiff earned her nursing license in 1982 and worked as a licensed practical nurse until she was fired in 2005. Between 2005 and 2008, plaintiff was mostly unemployed. In 2007, she got a job providing care to a bedridden man, but she was able to complete only two days of work. In

2008, she worked for several months selling newspapers. She also worked briefly in 2008 caring for an elderly couple.

Plaintiff's alleged onset date of her disability is April 17, 2008. Plaintiff has not worked at all since late 2008, in part because of physical problems stemming from a fall down the stairs that year. Doc. #12-3 at 47. She has received treatment since at least 2007 for a range of physical and mental health conditions. Plaintiff lives with her husband, who cares for her and manages their household. She currently receives Social Security benefits.

Plaintiff's application for disability benefits was initially denied in October 2012 and upon reconsideration in February 2013. Plaintiff was represented by an attorney at a hearing in March 2014 before Administrative Law Judge (ALJ) Ronald J. Thomas. In May 2014, the ALJ held that plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff requested Appeals Council review in June 2014. In August 2015, the Appeals Council denied plaintiff's request for review. Plaintiff then filed this federal action asking the Court to reverse the Commissioner's decision or remand the case for rehearing. Doc. #15. In response, the Commissioner has moved to affirm the Social Security Administration's final decision. Doc. #18. On August 26, 2016, this Court heard oral argument on the parties' motions.

### DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per*

*curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

To qualify for disability insurance benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he or she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work

3

> experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v). In applying this framework, if a claimant can be found disabled or not disabled at a particular step, a decision will be made without proceeding to the next step. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving her case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

Here, before undertaking the five-step inquiry, the ALJ determined that the date that plaintiff was last insured (her "date last insured" or "DLI") was December 31, 2010. Neither party disputes the DLI determination. The relevant time period for determining whether plaintiff was disabled for purposes of her entitlement to disability insurance benefits, then, runs from the alleged date of the onset of her disability of April 17, 2008, through the DLI of December 31, 2010.

The ALJ determined at step one that plaintiff did not engage in substantial gainful activity during the relevant time period. At step two, the ALJ found that plaintiff suffered from the following "severe impairments" during the relevant time period: obesity, degenerative joint disease, fibromyalgia, depressive disorder, anxiety disorder, and history of substance abuse. The ALJ determined that a number of plaintiff's other conditions did not constitute severe impairments, including diabetes mellitus, hepatitis, hypertension, myocardial infarction, sleep

4

apnea, headaches, GERD, obesity, breast cancer, and deep vein thrombosis. The ALJ also noted that some of plaintiff's conditions (including breast cancer, pulmonary embolism, and deep vein thrombosis) were not present at all prior to plaintiff's DLI, making these conditions not relevant to her disability claim.

At step three, the ALJ determined that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Doc. #12-3 at 18. Specifically, the ALJ compared plaintiff's symptoms to the following listed impairments: major dysfunction of a joint (Listings § 1.02); degenerative disc disease (§ 1.04); pulmonary disease (§ 3.02); affective disorders (§ 12.04); anxiety-related disorders (§ 12.06); substance addiction disorders (§ 12.09); and chronic obstructive inflammatory arthritis (§ 14.09). The ALJ concluded that plaintiff's impairments did not meet the requirements of any of these listings, even when considered in combination with plaintiff's obesity. *See* SSR 02-1P, 2002 WL 34686281 (Sept. 12, 2002) ("a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.").

Proceeding to step four, the ALJ was required to identify plaintiff's residual functional capacity ("RFC"), which is "the most the claimant can still do in a work setting despite the limitations imposed by h[er] impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*). The ALJ concluded that plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the [plaintiff] was limited to only occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing and balancing; and was limited to an environment free from poor ventilation, dust, fumes, gases, odors, humidity, wetness and temperature extremes." Doc. #12-3 at 21. Plaintiff was "further limited to

performing simple, routine, repetitive work or unskilled work activity." *Ibid*. Based on this evaluation, the ALJ determined that plaintiff could not perform any of her past work as a nurse.

The ALJ also made findings at step four about plaintiff's credibility. Specifically, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible," and that "[t]he objective medical evidence does not support the claimant's allegations of complete and total disability prior [to] her date last insured." Doc. #12-3 at 23–24. In addition, the ALJ assessed the opinions of plaintiff's treating physicians, finding Dr. Haroon Khalid's opinion to be "neither controlling nor persuasive," and similarly assigning only "limited weight" to the opinion of Dr. Lee Combrink-Graham. Doc. #12-3 at 26.

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC to conclude that prior to the DLI, plaintiff was capable of performing jobs that exist in significant numbers in the national economy, and therefore concluded that plaintiff was not disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that plaintiff could perform work as a cashier, assembler, or inspector.

* * *

In support of her motion, plaintiff advances six claims of error: (1) that the ALJ made several factual errors and misstated the evidence; (2) that the ALJ erred in finding that plaintiff does not have listed impairments; (3) that the ALJ did not properly apply the treating physician rule; (4) that the ALJ did not make sufficiently specific findings regarding plaintiff's pain; (5) that the ALJ improperly determined plaintiff's residual functional capacity; and (6) that defendant failed to meet her burden of demonstrating that plaintiff can perform work which is

available in significant numbers in the national economy. *See* Doc. #15.

In oral argument before this Court on August 26, 2016, plaintiff focused on two of these arguments in particular: the ALJ's alleged misapplication of the treating physician rule, and the ALJ's alleged failure to give proper weight to plaintiff's obesity in analyzing whether plaintiff had a listed impairment. Because plaintiff emphasized these two claims, I will address them first, before addressing the remainder of plaintiff's objections.

### Alleged Misapplication of Treating Physician Rule

One of plaintiff's primary objections is that the ALJ misapplied the "treating physician rule." The law is clear that the Commissioner must apply the treating physician rule when considering "the nature and severity of [a claimant's] impairments." 20 C.F.R. § 404.1527(d)(2). "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128. Even if a treating physician's opinion is not worthy of controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Id*. at 129 (internal quotation marks and citations omitted) (alterations in original); *see also* 20 C.F.R. § 404.1527(c). Ultimately, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for

7

not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537

F.3d at 129-30 (internal quotation marks and citations omitted).

Plaintiff claims that the ALJ erred in assigning only limited weight to the opinions of her

treating physicians, Dr. Haroon Khalid and Dr. Lee Combrink-Graham. Dr. Khalid treated

plaintiff on a monthly basis from 2007 through 2013. He opined that plaintiff "has multiple

medical problems and is completely disabled for employment purposes." Doc. #12-9 at 164.

Although Dr. Khalid gave this opinion in 2013, he also submitted an addendum noting that

plaintiff "was suffering from significant limitations before December 2010." Doc. #12-9 at 166.

The ALJ considered Dr. Khalid's opinion but found that his opinion was not supported by

clinical findings prior to the DLI, that his opinion was based partly on plaintiff's subjective

assessment of her physical abilities, and that his opinion was in some cases inconsistent with Dr.

Khalid's own treatment notes. *See* Doc. #12-3 at 26.

Similarly, the ALJ assigned limited weight to the opinions of Dr. Combrink-Graham

regarding plaintiff's mental health. Dr. Combrink-Graham, a psychiatrist, treated plaintiff from

2007 to 2012. He described plaintiff's symptoms and opined that she was likely to be absent

from work more than three times per month. *See* Doc. #12-10 at 206–13. The ALJ reasoned that

Dr. Combrink-Graham's opinions were "not supported by clinical signs and findings [and]

appear[ed] to have been based solely on the claimant's subjective complaints." Doc. #12-3 at 26.

Because the ALJ cited permissible reasons for assigning limited weight to the opinions of Dr.

Khalid and Dr. Combrink-Graham, the ALJ did not commit reversible error. *See Baladi v.

Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) ("The treating physician's opinions were based

upon plaintiff's subjective complaints of pain and unremarkable objective tests, and therefore the

ALJ was not required to give that opinion controlling weight").

8

Plaintiff also argues that the ALJ erred in assigning "no weight" to all treating physician opinions that were obtained after the DLI. Defendant correctly points out that plaintiff mischaracterizes the ALJ's determination here. In fact, the ALJ assigned "no weight" to opinions from treatment providers regarding *conditions* that began after the claimant's DLI, where there was no evidence to suggest that the conditions were present prior to the DLI. Doc. #12-3 at 18. The ALJ therefore did not err in assigning these opinions limited weight.

### *Allegedly erroneous finding that plaintiff does not have listed impairments*

Plaintiff's other primary objection is that the ALJ erred at step three in finding that plaintiff did not have a "listed impairment" as defined in the Social Security regulations. Specifically, plaintiff argues that she meets the following regulatory requirement for a listed impairment:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ considered whether plaintiff had a listed impairment under Section 1.02 in his decision but concluded that "the claimant's musculoskeletal pain and symptoms of arthritis have not been associated with the anatomical deformity or the inability to use her upper or lower extremities as required by section 1.02" of the listed impairments. Doc. #12-3 at 18. The ALJ's finding here was supported by substantial evidence, given that plaintiff's medical records do not indicate an anatomical deformity or the "inability to ambulate effectively" prior to the DLI.

Plaintiff argues in her motion and emphasized at the hearing that the ALJ should have considered her obesity in combination with her joint impairments to find that she had a listed impairment. But the ALJ did explicitly consider plaintiff's obesity, finding that "the evidence fails to establish that the additional impact of the claimant's excess weight would have caused any relevant listing to be met or medically equaled prior to the date last insured." Doc. #12-3 at 19. The ALJ's finding that plaintiff did not have a listed impairment was not the product of legal error and is supported by substantial evidence.

### Alleged factual errors

Plaintiff also contends that the ALJ made three "serious factual errors," and that due to these errors, plaintiff did not receive a full and fair hearing. Doc #15-1 at 11–14. First, plaintiff asserts that the ALJ erred at step two in finding no evidence of ongoing cardiac issues after plaintiff's myocardial infarction (heart attack) in September 2009. In support of her position, plaintiff points to an August 2011 report from St. Vincent's Health Services that lists "CHF" (congestive heart failure) as part of her past medical history. She also points to a series of medical records that reference her hypertension. But all of these records are dated *after* plaintiff's DLI. Because the record does not contain evidence of ongoing cardiac issues after the myocardial infarction and before the DLI, the ALJ's factual finding here was based on substantial evidence.

Second, plaintiff argues that the ALJ erred in finding at step three that she was only mildly impaired in activities of daily living. Specifically, plaintiff claims that the ALJ improperly relied on her statement to a treatment provider that she had been able to "keep things going" while her husband was in jail. Plaintiff disputes that she was able to "keep things going," pointing to a number of missed medical appointments during that time period. But the ALJ's

finding that plaintiff was only mildly impaired in activities of daily living was also supported by other evidence besides the "keep things going" statement, including the fact that plaintiff worked for several months selling newspapers in 2008 and the fact that she repeatedly reported in counseling sessions that she was looking for work prior to her DLI. The ALJ's finding that plaintiff was mildly impaired in activities of daily living was therefore supported by substantial evidence.

Third, plaintiff contends that the ALJ erred in finding at step three that she was only mildly impaired in social functioning, because the ALJ incorrectly found that plaintiff had a relationship with her family. The record as a whole indicates a tumultuous relationship between plaintiff and her family members. But regardless of plaintiff's relationship (or lack thereof) with her family, the ALJ's finding of mild impairment in social functioning was also supported by other evidence. For example, the ALJ cited plaintiff's relationship with her husband (who was her boyfriend at the time of the DLI), as well as medical records indicating that plaintiff interacted in a socially appropriate manner and had no history of workplace conflicts. The ALJ's finding that plaintiff was mildly impaired in social functioning was therefore supported by substantial evidence.

### *Alleged lack of findings regarding plaintiff's pain*

Plaintiff next claims that the ALJ erred because he failed to "either accept the claimant's pain testimony or make specific findings rejecting that testimony." Doc. #15-1 at 19–20. Plaintiff correctly notes that the ALJ is obligated to set forth his credibility findings with "sufficient specificity to permit intelligible plenary review of the record." *Ibid.* (citing *Williams ex rel. Williams v. Bowen*, 859 F.2d 255 (2d Cir. 1988)). Here, in contrast, the ALJ's decision detailed plaintiff's reports of pain but ultimately concluded that plaintiff's testimony was not credible

because it was not consistent with the medical records. *See* Doc. #12-3 at 25. The ALJ had the authority to find plaintiff not credible and cited permissible, sufficiently specific reasons for his finding. The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*).

### *Alleged error as to plaintiff's residual functional capacity*

Plaintiff contends that the ALJ improperly determined her residual functional capacity at step four, because the RFC did not include plaintiff's limited ability to walk or her need for frequent breaks. Doc. #15-1 at 20–21. It is well-established that a calculation of RFC must be based on the medical record and not on the ALJ's lay opinion. *See Burgess*, 537 F.3d at 131. In calculating the RFC, "an ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*). Further, a treating physician's opinion is not afforded controlling weight if that opinion is inconsistent with other substantial evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Abbott v. Colvin*, 596 F. App'x 21, 24 (2d Cir. 2015).

Plaintiff's limited ability to walk and her need for frequent breaks were expressed in her own testimony, Dr. Khalid's opinion, and Dr. Greenspan's opinion. The ALJ acknowledged plaintiff's hearing testimony that "prolonged sitting, standing and walking are difficult due to pain . . . she cannot walk great distances due to shortness of breath . . . [and] she walks with a cane for assistance." Doc. #12-3 at 21–22. But the ALJ went on to find that plaintiff's testimony was not entirely credible and that her testimony was not consistent with the objective medical

12

evidence and treatment records from before the DLI. As for Dr. Khalid's opinion, the ALJ found

it unpersuasive and did not assign it controlling weight, as discussed above. And the ALJ also

discounted Dr. Greenspan's opinion regarding plaintiff's need for frequent breaks, since Dr.

Greenspan did not begin treating plaintiff until 2012, well after her DLI. In light of these

determinations about credibility and weight, the ALJ did not err in excluding plaintiff's limited

ability to walk and her need for frequent breaks from her RFC.

### *Alleged error as to employment availability*

Plaintiff's final claim is that the ALJ erred at step five in finding plaintiff capable of

performing jobs that exist in significant numbers in the national economy. The ALJ relied on the

testimony of vocational expert Albert Sabella, who testified that a hypothetical individual of

plaintiff's age, education, work experience, and RFC would be able to perform cashier jobs,

inspection jobs, and assembly jobs. Unlike at the first four steps, the Commissioner bears the

burden of proof at step five. Plaintiff claims that the Commissioner did not meet this burden for

several reasons.

Plaintiff first argues that the ALJ erred in finding that she could perform the work of a

cashier. Cashier is classified as a GED reasoning level 3 job, which plaintiff claims cannot be

performed by an individual with plaintiff's RFC (limited to simple, routine, repetitious, or

unskilled work). As defendant points out, however, a decision that a plaintiff has the "limitation

of only short, simple instructions is . . . not inconsistent with either jobs requiring GED level 2 or

3 reasoning." *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 409 (D. Conn. 2012), *aff'd*, 515 F.

App'x 32 (2d Cir. 2013).

Plaintiff also takes issue with a portion of the vocational expert's testimony in which the

vocational expert reduced the number of available inspector and assembly jobs by 30 percent to

account for pulmonary irritants. Doc. #12-3 at 66–67. Plaintiff argues that the expert's estimate was improper because this information is not contained in the Dictionary of Occupational Titles. Plaintiff does not, however, introduce any evidence to demonstrate that the expert's estimate is factually incorrect. The failure of the vocational error to cite a source for his estimate does not constitute error. The Second Circuit has "noted the marked absence of any 'applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation.'" *Brault*, 683 F.3d at 450. Accordingly, the ALJ did not err in relying on the vocational expert's estimates.

Finally, plaintiff contends that the ALJ improperly "cherry-picked" the vocational expert's testimony. Doc #15-1 at 24. When questioning the vocational expert at the hearing, plaintiff's attorney asked the vocational expert whether the individual in the hypothetical posed by the ALJ—an individual with plaintiff's RFC—would still be capable of working if she additionally needed a ten-minute break every 30 minutes, was absent from work more than three times per month, and was only occasionally able to use her arms for reaching. The vocational expert responded that an individual who needs a ten-minute break every 30 minutes or is absent from work more than three times a month would be precluded from finding work, and that being limited to occasional reaching would reduce the number of available jobs by 50 to 70 percent. The ALJ did not ultimately rely on this portion of the vocational expert's testimony in making his step five determination, and instead chose to rely on the earlier hypothetical, which was based on the ALJ's RFC determination. Plaintiff thus accuses the ALJ of "cherry picking." But given that the limitations added by plaintiff's attorney were not part of the RFC, the ALJ was justified in disregarding these portions of the vocational expert's testimony. *See Carvey v. Astrue*, 380 F. App'x 50, 54 (2d Cir. 2010) ("necessarily" rejecting claim that vocational expert's

opinion was based on flawed RFC, where court had "already concluded that substantial record evidence supports" that RFC).

* * *

In short, I find that the ALJ's factual findings are supported by substantial evidence, and I do not find the ALJ's decision to be based upon legal error. Accordingly, I am required to deny plaintiff's motion to reverse or remand the decision of the Commissioner and grant defendant's motion to affirm.

## CONCLUSION

Plaintiff's motion to reverse or remand the decision of the Commissioner (Doc. #15) is DENIED. Defendant's motion to affirm the decision of the Commissioner (Doc. #18) is GRANTED. The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 2nd day of September, 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge